## WADE *v.* HUNTER, WARDEN.

No. 427.   Argued March 7, 1949.—Decided April 25, 1949.

*R. T. Brewster* and *N. E. Snyder* argued the cause for petitioner. With them on the brief was *Harry W. Colmery.*

*Oscar H. Davis* argued the cause for respondent. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Campbell* and *Robert S. Erdahl.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The Fifth Amendment to the Constitution provides that a person shall not "be twice put in jeopardy of life or limb" for the same offense. The petitioner, now in prison under a court-martial conviction for a serious offense, contends he is entitled to his freedom because another court-martial had previously put him in jeopardy for the same offense. The first court-martial was dissolved by the convening authority before the court reached a decision. The Government contends that the Fifth Amendment's double-jeopardy provision, if applicable to military courts, did not bar the second court-martial conviction here because, as the Government views the record, dissolution of the first court-martial was dictated by a pressing military tactical situation. The circumstances from which these contentions arise are as follows.

March 13, 1945, American troops of the 76th Infantry Division entered Krov, Germany. The next afternoon two German women were raped by two men in American uniforms. Several days later petitioner and another

American soldier were arrested upon charges that they committed these offenses. Two weeks later, March 27, the troops had advanced about 22 miles farther into Germany to a place called Pfalzfeld. On that date at Pfalzfeld petitioner and the other soldier were put on trial· before a general court-martial convened by order of the Commanding General of the 76th Infantry Division to which Division the two soldiers were attached.[1] After hearing evidence and arguments of counsel, the court-martial closed to consider the case. Later that day the court-martial reopened and announced that the court would be continued until a later date to be fixed by the judge advocate. The reason for the continuance was the desire of the court-martial to hear other witnesses not then available before deciding the guilt or innocence of the accused.[2]

A week later the Commanding General of the 76th Division withdrew the charges from the court-martial directing it to take no further proceedings. The General then transmitted the charges to the Commanding General of the Third Army with recommendations for trial by a new court-martial. The reason for transferring the charges as explained in a communication to the Commanding General of the Third Army was:

"The case was previously referred for trial by general court-martial and trial was commenced. Two witnesses, the mother and father of the victim of

---

[1] The charges were under the 92d Article of War, 10 U. S. C. § 1564.

[2] "Law Member: The Court desires that further witnesses be called into the case, and to allow time to secure these witnesses, this case will be continued. We would like to have as witnesses brought before the Court, the parents of this person making the accusation, Rosa Glowsky, and also the ·sister-in-law that was in the room who could further assist in the identification or identity of the accused. The Court will be continued until a later date set by the T.[rial] J.[udge] A.[dvocate]."

the alleged rape, were unable to be present due to sickness, and the Court continued the case so that their testimony could be obtained. Due to the tactical situation the distance to the residence of such witnesses has become so great that the case cannot be completed within a reasonable time."

The Commanding General of the Third Army concluded that the "tactical situation" of his command and its "considerable distance" from Krov made it impracticable for the Third Army to conduct the court-martial. Accordingly, he in turn transmitted the charges to the Fifteenth Army stating that this action was necessary to carry out the policy of the American Army in Europe to accelerate prompt trials "in the immediate vicinity of the alleged offenses." Pursuant to this transmittal, the Fifteenth Army Commanding General convened a court-martial at a point about forty miles from Krov. Petitioner, represented by counsel, filed a plea in bar alleging that he had been put in jeopardy by the first court-martial proceedings and could not be tried again. His plea was overruled, the case was tried, and a conviction followed. He was sentenced to a dishonorable discharge, forfeiture of all pay and allowances, and life imprisonment, which imprisonment was later reduced to twenty years.[3]

After exhausting his right to military review, petitioner brought this habeas corpus proceeding in a federal district court. That court ordered his release, holding that his plea of former jeopardy should have been sustained. 72 F. Supp. 755. The Court of Appeals reversed, one judge dissenting. 169 F. 2d 973. We hold

---

[3] The other soldier was acquitted by the court-martial. The acting Army judge advocate in reviewing petitioner's conviction said: "Four witnesses, all German, positively identified the accused Wade. The same witnesses failed to identify" the other soldier.

that under the circumstances shown, the Fifth Amendment's double-jeopardy provision did not bar petitioner's trial before the second court-martial.[4]

The interpretation and application of the Fifth Amendment's double-jeopardy provision have been considered chiefly in civil rather than military court proceedings. Past cases have decided that a defendant, put to trial before a jury, may be subjected to the kind of "jeopardy" that bars a second trial for the same offense even though his trial is discontinued without a verdict. See *Kepner* v. *United States,* 195 U. S. 100, 128; *cf. Palko* v. *Connecticut,* 302 U. S. 319, 322–323. The same may be true where a judge trying a case without a jury fails for some reason to enter a judgment. *McCarthy* v. *Zerbst,* 85 F. 2d 640, 642. The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the

---

[4] Our holding that under the circumstances here the Fifth Amendment did not bar trial by the second court-martial makes it unnecessary to consider the following questions discussed in the Government's brief: (1) To what extent a court-martial's overruling of a plea of former jeopardy is subject to collateral attack in habeas corpus proceedings. See *Carter* v. *McClaughry,* 183 U. S. 365, 390; and *cf. Grafton* v. *United States,* 206 U. S. 333, 352–353; *Sunal* v. *Large,* 332 U. S. 174, and cases collected in n. 8, p. 179. (2) The validity of the Fortieth Article of War, 41 Stat. 795, 10 U. S. C. § 1511. That article provides in part as follows:

"No person shall, without his consent, be tried a second time for the same offense; but no proceeding in which an accused has been found guilty by a court-martial upon any charge or specification shall be held to be a trial in the sense of this article until the reviewing and, if there be one, the confirming authority shall have taken final action upon the case."

type of oppressive practices at which the double-jeopardy prohibition is aimed. There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. In such event the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again. And there have been instances where a trial judge has discovered facts during a trial which indicated that one or more members of a jury might be biased against the Government or the defendant. It is settled that the duty of the judge in this event is to discharge the jury and direct a retrial.[5] What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.

When justice requires that a particular trial be discontinued is a question that should be decided by persons conversant with factors relevant to the determination. The guiding rule of federal courts for determining when trials should be discontinued was outlined by this Court in *United States* v. *Perez,* 9 Wheat. 579. In that case the trial judge without consent of the defendant or the Government discharged the jury because its members were unable to agree. The defendant claimed that he could not be tried again and prayed for his discharge as a matter of right. In answering the claim this Court said at p. 580:

> ". . . We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances

---

[5] *Simmons* v. *United States,* 142 U. S. 148, 154; *Thompson* v. *United States,* 155 U. S. 271, 273–274.

into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office. . . ."

The rule announced in the *Perez* case has been the basis for all later decisions of this Court on double jeopardy.[6] It attempts to lay down no rigid formula. Under the rule a trial can be discontinued when particular circumstances manifest a necessity for so doing, and when failure to discontinue would defeat the ends of justice. We see no reason why the same broad test should not be applied in deciding whether court-martial action runs counter to the Fifth Amendment's provision against double jeopardy. Measured by the *Perez* rule to which we adhere, petitioner's second court-martial trial was not the kind of double jeopardy within the intent of the Fifth Amendment.

There is no claim here that the court-martial went beyond its powers in temporarily continuing the trial to

---

[6] See, *e. g., Simmons* v. *United States*, 142 U. S. 148; *Logan* v. *United States*, 144 U. S. 263, 297–298; *Keerl* v. *Montana*, 213 U. S. 135, 137; *Lovato* v. *New Mexico*, 242 U. S. 199.

obtain the benefit of other witnesses.[7]   But the District
Court viewed the record as showing that the only purpose
of dissolving the court-martial was to get more witnesses.
This purpose, the District Court held, was not the kind of
"imperious" or "urgent necessity" that came within the
recognized exception to the double-jeopardy provision.
See *Cornero* v. *United States,* 48 F. 2d 69.   We are urged
to apply the *Cornero* interpretation of the "urgent neces-
sity" rule here.   We are asked to adopt the *Cornero* rule
under which petitioner contends the absence of witnesses
can never justify discontinuance of a trial.   Such a rigid
formula is inconsistent with the guiding principles of the
*Perez* decision to which we adhere.   Those principles com-
mand courts in considering whether a trial should be ter-
minated without judgment to take "all circumstances into
account" and thereby forbid the mechanical application
of an abstract formula.   The value of the *Perez* prin-
ciples thus lies in their capacity for informed application
under widely different circumstances without injury to
defendants or to the public interest.

Furthermore, this record is sufficient to show that the
tactical situation brought about by a rapidly advancing
army was responsible for withdrawal of the charges from
the first court-martial.   This appears in the first order
of transmittal of the charges.   That order was made by
the Commanding General of the 76th Division who was

---

[7] The Manual for Courts-Martial, par. 75*a* (1928), recommends
that where the ". . . evidence appears to be insufficient for a proper
determination of any issue or matter before it, the court may and
ordinarily should, take appropriate action with a view to obtaining
such available additional evidence as is necessary or advisable for
such determination.   The court may, for instance, require the trial
judge advocate to recall a witness, to summon new witnesses, or to
make investigation or inquiry along certain lines with a view to dis-
covering and producing additional evidence."

responsible for convening the court-martial and who was also responsible for the most effective military employment of that Division in carrying out the plan for the invasion of Germany. There is no intimation in the record that the tactical situation did not require the transfer order. The court-martial was composed of officers of the invading Army Division. Momentous issues hung on the invasion and we cannot assume that these court-martial officers were not needed to perform their military functions. In the *Perez* case we said that the sound discretion of a presiding judge should be accepted as to the necessity of discontinuing a trial. This case presents extraordinary reasons why the judgment of the Commanding General should be accepted by the courts. At least in the absence of charges of bad faith on the part of the Commanding General, courts should not attempt to review his on-the-spot decision that the tactical situation required transfer of the charges.

*Affirmed.*

Mr. Justice Murphy, with whom Mr. Justice Douglas and Mr. Justice Rutledge agree, dissenting.

I agree with the court below that in the military courts, as in the civil, jeopardy within the meaning of the Fifth Amendment attaches when the court begins the hearing of evidence. I agree also that a valid charge was pending before the first court-martial with which we are now concerned, and that the court had jurisdiction of the subject-matter and of the person of the petitioner.

In the first court-martial evidence was introduced; in fact, both sides had completed the presentation of their cases and had submitted oral argument, and the court had closed to consider its decision. The court was later opened on its own motion, for the purpose of hearing the testimony of three named witnesses, who were expected to shed light on the question of identification.

The Commanding General of the unit comprising petitioner and the court-martial that was trying him withdrew the charges and dissolved the court-martial, and transmitted the papers to the Commanding General of the Third Army, "with a recommendation of trial by general court-martial." They were subsequently transferred to the Commanding General of the Fifteenth Army, who referred the case for trial by general court-martial. Petitioner was tried and convicted, after the court-martial had overruled a plea of former jeopardy based on the prior proceeding. The Commanding General, Fifteenth Army, on the recommendation of his Staff Judge Advocate, approved the finding of guilty and reduced the period of confinement from life to twenty years. The case was assigned for review to Board of Review No. 4, consisting of three Judge Advocates in the Branch Office of the Judge Advocate General with the European Theater. This Board, sitting in Paris, close to the scene of military operations, filed a unanimous opinion to the effect that the plea in bar should have been sustained[1] and that consequently the record of trial was legally insufficient to support the findings and sentence. The Assistant Judge Advocate General filed a dissenting opinion, and the sentence was confirmed by the Commanding General, European Theater. In the *habeas corpus* proceedings in

---

[1] The opinion of the Board of Review reads in part as follows: "We see nothing which renders the absence of witnesses, as shown by the record of trial in this case, an emergent situation in exception to the rule in the Federal courts. Their witnesses may lie beyond the reach of process, if process issues witnesses may not respond, oral promises to appear may not be kept, and they may become ill during trial; but such difficulties in proof are not grounds for a termination of trial and a second prosecution. Imperious necessity means a sudden and overwhelming emergency, uncontrollable and unforeseeable, infecting the judicial process and rendering a fair and impartial trial impossible. It does not mean expediency." Transcript of Record, p. 75.

the United States, the District Court agreed with the Board of Review that the plea of double jeopardy should have been sustained. The Court of Appeals reversed, one judge dissenting.

There is no doubt that Wade was placed in jeopardy by his first trial. This Court now holds that the decision of his Commanding Officer, assessing the tactical military situation, is sufficient to deprive him of his right under the Constitution to be free from being twice subjected to trial for the same offense. With this reading of the Constitution I cannot agree. The harassment to the defendant from being repeatedly tried is not less because the army is advancing. The guarantee of the Constitution against double jeopardy is not to be eroded away by a tide of plausible-appearing exceptions. The command of the Fifth Amendment does not allow temporizing with the basic rights it declares. Adaptations of military justice to the exigencies of tactical situations is the prerogative of the commander in the field, but the price of such expediency is compliance with the Constitution. I would reverse the judgment below.