**Raymond DOWNUM, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 19033.**

United States Court of Appeals
Fifth Circuit.

March 9, 1962.

Richard Tinsman, San Antonio, Tex., for appellant.

Russell B. Wine, U. S. Atty., San Antonio, Tex., John W. McDonald, Asst. U. S. Atty., Waco, Tex., for appellee.

Before JONES, BROWN and GEWIN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This appeal brings into consideration the effect of the double jeopardy provision of the Fifth Amendment of the Constitution.[1] Our view of the circumstances of this case is that this constitutional guarantee has not been infringed by Downum's trial and conviction. We therefore affirm.

The facts are simple and undisputed. The problem concerns their legal significance. On April 19, 1961, Downum was arraigned in open court on an indictment of six counts relating to stealing, forging, and passing Government checks, and conspiracy to commit those acts. 18 U. S.C.A. §§ 1708, 495 and 371. Downum entered a plea of not guilty on all counts while his codefendants pleaded guilty.

---

1. " * * * nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; * * * " U.S.Const. Amend. V.

This was done prior to the selection or impaneling of the jury.

On April 25, 1961, the case was called for trial. Both sides announced ready and a jury was selected and sworn in the morning. The jury was directed to return in the afternoon after being instructed not to discuss any phase of the case. At 2:00 o'clock that afternoon, the Judge announced from the bench that he had been advised by the prosecutor that since a material witness was not present, the trial could not proceed.[2] Despite objection by Downum, the jury was then called into the courtroom and discharged.

On April 27, 1961, two days later, and over Downum's plea of former jeopardy, a new jury was selected. Downum, convicted on all six counts, was sentenced to eight years on five counts to run concurrently, and five years on the sixth count to run concurrently with the other counts.

Downum now vigorously presses the single point of error that his conviction by the second jury was illegal because he was placed in jeopardy when the first jury was impaneled and sworn, and there was not sufficient cause for its discharge.[3]

The Government takes the position that the action of the trial Judge was well within his judicial discretion in the interest of public justice. Further, the impaneling of the first jury did not actually commence the trial in any real sense—at least not to such an extent as to place the defendant in jeopardy. The Government advances other reasons. The defendant was not put to additional expense, or embarrassment. He was not kept in a continued and prolonged state of anxiety. Nor has he shown himself to have been prejudiced in any way, especially since he has not even claimed that the first jury was any more, or less, favorable than the second jury.

■■ The problem may be illumined, but it is not answered by extremes. Clearly if the jury had not been impaneled, there could be no question of former jeopardy. Just as clearly, if substantial vital evidence had been presented to the first jury there could have been no second trial in the absence of strong and compelling circumstances. Here, the case is somewhere in between: there was a jury impaneled, but there was no evidence offered or heard.

■ The guiding principles were announced almost a century and a half ago in United States v. Perez, 1824, 9 Wheat. 579, 22 U.S. 579, 6 L.Ed. 165. There the jury was unable to agree and the Court discharged the jury and declared a mistrial. In response to certified questions, the Court held that a Judge may discharge a jury within sound discretion without operating as an acquittal when the ends of public justice require it.

■ A rigid, inflexible rule of law would not work in situations of this kind. All circumstances must be weighed on the delicate scales of justice. Courts are obliged to see that the scales do not become loaded on either side. On the one side, individuals must be protected from oppressive and fundamentally unfair governmental actions. On the other side, is the manifest public interest in the protection of society

---

2. The absent witness was to give evidence on two counts of the six-count indictment. The reason for his absence was that he had not been subpoenaed as he had been out of town. This was brought to the prosecutor's attention after the jury had been selected. Downum objected to any postponement or discharge of the jury and moved that the trial proceed on the remaining four counts. But this was overruled. His motion to dismiss those two counts for lack of prosecution was likewise overruled.

3. Downum's brief phrases it this way:
"The Trial Court erred in trying defendant before a second jury two days after a prior jury had been selected, sworn in and then discharged because the prosecutor announced not ready, and thereby defendant had been placed in jeopardy once the first jury was sworn in. The absence of a witness as to 2 counts of a 6-count indictment was not an 'unforeseeable circumstance' causing the discharge of the first jury."

by effectuating the policies of the penal laws.

■ Achieving this balance, it is our conclusion that, whatever may be the reaches or impact of this Amendment in other situations shading off of the precise one here, the fundamental purpose of this guarantee is not lost or diminished here by permitting a trial before a new jury after discharge of the first one. The circumstances do not here tip the scales in favor of the accused. Downum was never formally arraigned in the presence of the first jury. No evidence was presented for or against him.[4] Downum was never put to his defense. What, and all there had been, was the impaneling of the first jury and its discharge for reasons entirely unrelated to the jury or the composition of it.

■ Of course, there has to be some sound reason for the termination of the current trial proceedings which will invariably result in the discharge of one jury with the expectation that another one will be chosen at the subsequent proceeding. Gori v. United States, 1961, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901. What actually occurred will therefore be of great importance.[5] The reason here was real and substantial. A vital witness was not, and would not be, available for the trial. The protection of double jeopardy is tested against the action taken by the Court. Consequently, it is of secondary importance only to inquire into whether the action or inaction of the prosecutor in not earlier subpoenaing the witness was, or was not, justifiable or excusable. Of course, conduct of the prosecutor may be of great importance where circumstances indicate that events of this kind are being advanced and exploited as pretexts to squeeze out of a trial then going badly for the Government in the hopes that the deficiencies can be overcome in a later trial.

■ But here there was no such evidence, nor is there any indication that Downum has been deprived of any right of any kind or that he has been prejudiced in any way.[6]

■ This great constitutional bulwark stands against such conduct by the sovereign, State or Federal.[7] But only on rare occasions will the answer be found by looking at the particular stage to which the trial proceedings have transpired as though matters of such

4. United States v. Kraut, S.D.N.Y., 1932, 2 F.Supp. 16, 18–19, implies that introduction of some evidence is required: "It is now well established by a preponderance of judicial opinion, that a defendant in a criminal action is put in jeopardy when he has been arraigned and placed on trial on a valid information or indictment and before a court of competent jurisdiction. Of course, being put on trial involves the impaneling of the jury and the production of some evidence."

5. Of the constitutional guarantee against double jeopardy, Murphy v. United States, 7 Cir., 1923, 285 F. 801, 817, puts it this way. "Its enforcement and its application demand a test which is a practical, not a theoretical one. It is the evidence, and not the theory of the pleader, to which we must look to determine this issue."

6. See Lovato v. State of New Mexico, 1916, 242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244. See also Collins v. Loisel, 1923, 262 U.S. 426, 429, 43 S.Ct. 618, 67 L.Ed. 1062, where it was said, "The constitutional provision against double jeopardy can have no application unless a prisoner has, theretofore, been placed on trial. * * * Even the finding of an indictment, followed by arraignment, pleading thereto, repeated continuances, and eventually dismissal at the instance of the prosecuting officer on the ground that there was not sufficient evidence to hold the accused, was held, in Bassing v. Cady, 208 U.S. 386, 391, 28 S.Ct. 392, 52 L.Ed. 540, 13 Ann.Cas. 905, not to constitute jeopardy."

7. In the context of Fourteenth Amendment due process, see concurring opinion of Mr. Justice FRANKFURTER in Brock v. State of North Carolina, 1953, 344 U.S. 424, 429, 73 S.Ct. 349, 97 L.Ed. 456.
"A State falls short of its obligation when it callously subjects an individual to successive retrials on a charge on which he has been acquitted or prevents a trial from proceeding to a termination in favor of the accused merely in order to allow a prosecutor who has been incompetent or casual or even ineffective to see if he cannot do better a second time."

fundamental yet profound importance may be measured solely by matching case against case or trial element against trial element. Hence we reject the vigorous insistence that Cornero v. United States, 9 Cir., 1931, 48 F.2d 69, 74 A.L.R. 797, compels a reversal. Intrinsically there are likely distinctions. There the subpoenas had never been issued, while here there had been no service of the issued subpoena for reasons which the Court thought justifiable. Also, the delay in Cornero was two years, while here it was merely two days. But we do not stress these or other possible distinctions for the Supreme Court, just as are we, was "urged to apply the Cornero interpretation of the 'urgent necessity' rule * * *." It was, as are we, " * * * asked to adopt the Cornero rule under which * * * the absence of witnesses can never justify discontinuance of a trial." In rejecting these contentions the Court spoke authoritatively for us as well:

> "Such a rigid formula is inconsistent with the guiding principles of the Perez decision to which we adhere. Those principles command courts in considering whether a trial should be terminated without judgment to take 'all circumstances into account' and thereby forbid the mechanical application of an abstract formula. The value of the Perez principles thus lies in their capacity for informed application under widely different circumstances, without injury to defendants or to the public interest." Wade v. Hunter, 1949, 336 U.S. 684, 691, 69 S.Ct. 834, 838, 93 L.Ed. 974.

 This Court, though not dealing with the exact problem here, had earlier stated the matter in terms of just such substantial underlying considerations. "Various interpretations have been put on the word 'jeopardy', some courts thinking the first jeopardy is complete on the swearing of a jury, or on the submission of evidence. This is no doubt correct if the trial be stopped for insufficient cause. In other cases it is said that the meaning is that when there has been one real trial there shall not be another; but if a verdict is prevented by something serious, a mistrial can be declared and a new trial ordered without the consent of the accused." Sanford v. Robbins, 5 Cir., 1940, 115 F.2d 435, 438.

In the light of these principles the District Court did not abuse its sound discretion in discharging the first jury. United States v. Potash, 2 Cir., 1941, 118 F.2d 54, cert. denied, 313 U.S. 584, 61 S. Ct. 1103, 85 L.Ed. 1540.

Affirmed.