## DOWNUM *v.* UNITED STATES.

No. 489.   Argued March 20, 1963.—Decided April 22, 1963.

*Richard Tinsman,* by appointment of the Court, 371 U. S. 884, argued the cause and filed a brief for petitioner.

*Assistant Deputy Attorney General Geoghegan* argued the cause for the United States.   On the brief were *Solicitor General Cox, Assistant Attorney General Miller* and *Beatrice Rosenberg.*

Mr. Justice Douglas delivered the opinion of the Court.

This case, involving a federal prosecution for stealing from the mail and forging and uttering checks so stolen, presents a question under the Double Jeopardy Clause of the Fifth Amendment—". . . nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."   Petitioner and three others were charged in an indictment containing eight counts.   The codefendants pleaded guilty, petitioner being tried alone

before a jury and convicted on all but Counts 1 and 2, which did not apply to him. The claim of double jeopardy arose as follows:

On the morning of April 25, 1961, the case was called for trial and both sides announced ready. A jury was selected and sworn and instructed to return at 2 p. m. When it returned, the prosecution asked that the jury be discharged because its key witness on Counts 6 and 7 was not present—one Rutledge, who was the payee on the checks involved in those counts. Petitioner moved that Counts 6 and 7 be dismissed for want of prosecution and asked that the trial continue on the rest of the counts. This motion was denied and the judge discharged the jury over petitioner's objection. Two days later when the case was called again and a second jury impaneled, petitioner pleaded former jeopardy. His plea was overruled, a trial was had, and he was found guilty. The Court of Appeals affirmed, 300 F. 2d 137; and we granted the petition for certiorari because of the seeming conflict between this decision and *Cornero* v. *United States,* 48 F. 2d 69, from the Ninth Circuit. 371 U. S. 811.

The present case was one of a dozen set for call during the previous week, and those cases involved approximately 100 witnesses. Subpoenas for all of them, including Rutledge, had been delivered to the marshal for service. The day before the case was first called, the prosecutor's assistant checked with the marshal and learned that Rutledge's wife was going to let him know where her husband was, if she could find out. No word was received from her and no follow-up was made. The prosecution allowed the jury to be selected and sworn even though one of its key witnesses was absent and had not been found.

From *United States* v. *Perez,* 9 Wheat. 579, decided in 1824, to *Gori* v. *United States,* 367 U. S. 364, decided in 1961, it has been agreed that there are occasions when a

second trial may be had although the jury impaneled for the first trial was discharged without reaching a verdict and without the defendant's consent. The classic example is a mistrial because the jury is unable to agree. *United States* v. *Perez, supra; Logan* v. *United States,* 144 U. S. 263, 298; *Dreyer* v. *Illinois,* 187 U. S. 71, 85–86; *Keerl* v. *Montana,* 213 U. S. 135. In *Wade* v. *Hunter,* 336 U. S. 684, the tactical problems of an army in the field were held to justify the withdrawal of a court-martial proceeding and the commencement of another one on a later day. Discovery by the judge during a trial that a member or members of the jury were biased *pro* or *con* one side has been held to warrant discharge of the jury and direction of a new trial. *Wade* v. *Hunter, supra,* 689; *Simmons* v. *United States,* 142 U. S. 148; *Thompson* v. *United States,* 155 U. S. 271. At times the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him may be subordinated to the public interest—when there is an imperious necessity to do so. *Wade* v. *Hunter, supra,* 690. Differences have arisen as to the application of the principle. See *Brock* v. *North Carolina,* 344 U. S. 424; *Green* v. *United States,* 355 U. S. 184, 188. Harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict are examples when jeopardy attaches. *Gori* v. *United States, supra,* 369. But those extreme cases do not mark the limits of the guarantee. The discretion to discharge the jury before it has reached a verdict is to be exercised "only in very extraordinary and striking circumstances," to use the words of Mr. Justice Story in *United States* v. *Coolidge,* 25 Fed. Cas. 622, 623. For the prohibition of the Double Jeopardy Clause is "not against being twice punished, but against being twice put in jeopardy." *United States* v. *Ball,* 163 U. S. 662, 669.

The jury first selected to try petitioner and sworn was discharged because a prosecution witness had not been served with a summons and because no other arrangements had been made to assure his presence. That witness was essential only for two of the six counts concerning petitioner. Yet the prosecution opposed petitioner's motion to dismiss those two counts and to proceed with a trial on the other four counts—a motion the court denied. Here, as in *Wade* v. *Hunter, supra,* at 691, we refuse to say that the absence of witnesses "can never justify discontinuance of a trial." Each case must turn on its facts. On this record, however, we think what was said in *Cornero* v. *United States, supra,* states the governing principle. There a trial was first continued because prosecution witnesses were not present, and when they had not been found at the time the case was again called, the jury was discharged. A plea of double jeopardy was sustained when a second jury was selected, the court saying:

> "The fact is that, when the district attorney impaneled the jury without first ascertaining whether or not his witnesses were present, he took a chance. While their absence might have justified a continuance of the case in view of the fact that they were under bond to appear at that time and place, the question presented here is entirely different from that involved in the exercise of the sound discretion of the trial court in granting a continuance in furtherance of justice. The situation presented is simply one where the district attorney entered upon the trial of the case without sufficient evidence to convict. This does not take the case out of the rule with reference to former jeopardy. There is no difference in principle between a discovery by the district attorney immediately after the jury was

impaneled that his evidence was insufficient and a discovery after he had called some or all of his witnesses." 48 F. 2d, at 71.

That view, which has some support in the authorities,[1] is in our view the correct one. We resolve any doubt "in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion."[2] This means that the judgment below must be and is

*Reversed.*

---

[1] In *United States* v. *Watson,* 28 Fed. Cas. 499, 500–501, the court ruled as follows:

"The illness of the district attorney, it not appearing by the minutes that such illness occurred after the jury was sworn, or that it was impossible for the assistant district attorney to conduct the trial, and the motion to put off the case for the term being made by such assistant, cannot be regarded as creating a manifest necessity for withdrawing a juror. So, too, as to the absence of witnesses for the prosecution, it does not appear by the minutes that such absence was first made known to the law officers of the government after the jury was sworn, or that it occurred under such circumstances as to create a plain and manifest necessity justifying the withdrawing of a juror. The mere illness of the district attorney, or the mere absence of witnesses for the prosecution, under the circumstances disclosed by the record in this case, is no ground upon which, in the exercise of a sound discretion, a court can, on the trial of an indictment, properly discharge a jury, without the consent of the defendant, after the jury has been sworn and the trial has thus commenced. To admit the propriety of the exercise of the discretion on such grounds would be to throw open the door for the indulgence of caprice and partiality by the court, to the possible and probable prejudice of the defendants. When the trial of an indictment has been commenced by the swearing of the jury, the defendant is in their charge, and is entitled to a verdict of acquittal if the case on the part of the prosecution is, for any reason, not made out against him, unless he consents to the discharging of the jury without giving a verdict, or unless there is such a legal necessity for discharging them as would, if spread on the record, enable a court of error to say that the discharge was proper." And see *United States* v. *Shoemaker,* 27 Fed. Cas. 1067.

[2] *United States* v. *Watson, supra,* note 1, p. 501.

Mr. Justice Clark, with whom Mr. Justice Harlan, Mr. Justice Stewart and Mr. Justice White join, dissenting.

The Court in applying the rule of *Cornero* v. *United States,* 48 F. 2d 69 (C. A. 9th Cir. 1931), says that "the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him may be subordinated to the public interest—when there is an *imperious* necessity to do so." (Emphasis supplied.) The Court of Appeals was urged to adopt the *Cornero* rule, but it refused. Applying that rule here, the Court orders the conviction reversed and petitioner set free.*

---

*Both *Cornero* and *United States* v. *Watson,* 28 Fed. Cas. 499 (D. C. S. D. N. Y. 1868), which the Court says supports *Cornero,* are entirely distinguishable on their facts. In *Cornero* the Government sought a five-day continuance because its witnesses could not be found. This was followed by a mistrial and then two years later a second trial, as contrasted with a mere two-day delay in the instant case before a second jury was impaneled and the trial begun. It could therefore be said realistically that the Government proceeded at the first trial in *Cornero* without its evidence and that the retrial after two years was an harassment. Moreover, subpoenas in *Cornero* had neither been issued nor served, while here the subpoena had been issued but, for reasons which the trial court thought justifiable, it had not been served. In *Watson* the Court granted an eight-day continuance after the jury was sworn, on the ground that the District Attorney was ill and government witnesses were absent. Upon resumption of the trial the prosecutor asked that the case go off for the term because of the continued illness of the District Attorney. In holding that these circumstances did not warrant the discharge of the jury the Court observed that the illness of the District Attorney did not appear to have occurred after the jury was sworn, that apparently the government officers had not first learned of the absence of witnesses after the jury had been sworn, and that it was not shown that it was impossible for the Assistant District Attorney to conduct the trial. Nor was there any indication in *Watson* that subpoenas had been issued.

740

In *Wade* v. *Hunter,* 336 U. S. 684 (1949), this Court refused to follow the *Cornero* rule, which was characterized as holding that the absence of witnesses was not such an "imperious" or "urgent necessity" as to come within the recognized exception to the double jeopardy provision. *Id.,* at 691. The Court said:

> "We are asked to adopt the *Cornero* rule under which petitioner contends the absence of witnesses can never justify discontinuance of a trial. Such a rigid formula is inconsistent with the guiding principles of the *Perez* decision [*United States* v. *Perez,* 9 Wheat. 579 (1824)] to which we adhere. Those principles command courts in considering whether a trial should be terminated without judgment to take 'all circumstances into account' and thereby forbid the mechanical application of an abstract formula. The value of the *Perez* principles thus lies in their capacity for informed application under widely different circumstances without injury to the defendants or to the public interest." *Ibid.*

I adhere to *Wade* v. *Hunter,* which in short holds that "a trial can be discontinued when particular circumstances manifest a necessity for so doing, and when failure to discontinue would defeat the ends of justice." *Id.,* at 690.

In order to apply the principles of *Wade* v. *Hunter,* it is necessary that the facts be recalled. On Wednesday or Thursday of the week preceding trial, some 12 cases, including petitioner's, were set by the court for the following Monday. This was, in the words of the trial judge, "very short notice." Transcript of Record, p. 18. Subpoenas were issued by the District Attorney's office for approximately 100 witnesses and placed in the hands of the marshal. The petitioner's case was No. 10 on the list, and the prosecutor stated that he did not foresee that it would be, reached on Tuesday, the second day of the

week's hearings. The prosecutor's office was short-handed, one of the assistants being in the military service. The prosecutor who had been assigned to petitioner's case had learned from the marshal the previous day that the wife of a Mr. Rutledge, who was the key witness in petitioner's case, would inform them of her husband's whereabouts, if she should learn of it. Since the prosecutor was trying another case on the Tuesday morning that petitioner's case was called, he was unable immediately to contact the marshal and determine whether Mr. Rutledge was present, and he announced ready for trial without ascertaining this. The jury for petitioner's case was selected and then excused until 2 p. m., and the prosecutor proceeded to complete the hearing of his other case before noon. Then, upon checking with the marshal's office during the noon recess, the prosecutor discovered that Rutledge was not present. He immediately informed the judge in his chambers, and upon the opening of the afternoon session defense counsel was advised in open court that the key witness of the Government was not available and the case would have to go over a couple of days. A defense motion to dismiss two of the six counts in the indictment—those on which Rutledge was the key witness—on the ground of lack of prosecution and proceed to trial on the remaining counts was denied by the court, and the jury was discharged—all over objections from the defense. Two days later the case was called and the petitioner interposed his plea of double jeopardy. Thereafter, a second jury was impaneled, and petitioner was tried and found guilty on all counts.

The first jury had never begun to act in this case. Petitioner was never formally arraigned in the presence of the first jury, nor was any evidence presented or heard for or against him at that time, nor was he required to put on any defense. In addition, the second jury having been

impaneled two days later, there was no continued or prolonged anxiety, nor was the petitioner caused any additional expense or embarrassment, deprived of any right or prejudiced in any way. Neither has petitioner contended that one jury was more or less favorable than the other.

The conclusions of the trial court and the Court of Appeals indicate that they viewed the circumstances in which the prosecutor found himself as having resulted from excusable oversight. There is no indication that the prosecutor's explanation was a mere cover for negligent preparation or that his action was in any way deliberate. There is nothing in the record that even suggests that the circumstances were used by the prosecutor for the purpose of securing a more favorable jury or in any way to take advantage of or to harass the petitioner. Indeed, it appears to be just one of those circumstances which often creep into a prosecutor's life as a result of inadvertence when many cases must be handled during a short trial period.

We can of course visualize other ways of handling the situation. The judge might have held the first jury together, rather than discharging them, until Mr. Rutledge's attendance could have been obtained. But this, viewed prospectively from the moment the court acted, would have tied up 12 men on the panel for an indefinite period and disrupted the calendar for the entire week, if not longer. It is entirely understandable that the trial judge was concerned with his calendar. Moreover, even if a two-day continuance in the above manner—holding the first jury—were later held improper on appeal from the trial court's judgment, the petitioner could then be retried after suffering not only the time and expense of one full trial but also the disclosure of his defense. Nor is the claim of petitioner that the Government should have proceeded on the other counts of the indictment, which he claims did not require the testimony

of Rutledge, any more tenable. This not only would have required two trials but also might raise the legal proposition that the prosecution on the remaining two counts was barred. While ordinarily the other four counts might have been sufficient to support a maximum sentence, the prosecutor might well have had good reason, in addition to the obvious preference for one rather than two trials, for wanting all counts considered in one proceeding. The indictment charged the petitioner with forging and passing government checks and conspiring with two codefendants, who pleaded guilty, to commit those acts. Rutledge was the payee of some of the checks and might well have been an important, though not the key, witness with reference to the conspiracy. In fact, the prosecutor expressed to the trial court his opinion that, under the entire indictment, he could not safely go to trial without the attendance of Rutledge. Transcript of Record, pp. 19–20.

As I see the problem, the issue is whether the action of the prosecutor in failing to check on the presence of his witness before allowing a jury to be sworn was of such moment that it constituted a deprival of the petitioner's rights and entitled him to a verdict of acquittal without any trial on the merits. Obviously under the facts here he suffered no such deprivation. Ever since *Perez* this Court has recognized that the "ends of public justice" must be considered in determining such a question. 9 Wheat., at 580. In this light I cannot see how this Court finds that the trial judge abused his discretion in affording the Government a two-day period in which to bring forward its key witness who, to its surprise, was found to be temporarily absent. I believe that the "ends of public justice," to which Mr. Justice Story referred in *Perez,* require that the Government have a fair opportunity to present the people's case and obtain adjudication on the merits, rather than that the criminal be turned free because of the harmless oversight of the prosecutor.