UNITED STATES of America, Appellee,

v.

Solomon GLOVER, Defendant-Appellant.

No. 118, Docket 74-1739.

United States Court of Appeals, Second Circuit.

Argued Sept. 11, 1974.

Decided Oct. 4, 1974.

Hudson H. Reid, New York City (William C. Chance, Jr., New York City, of counsel), for defendant-appellant.

Mel P. Barkan, Asst. U. S. Atty., New York City (Paul J. Curran, U. S. Atty., and S. Andrew Schaffer, Asst. U. S. Atty., S. D. of New York, of counsel), for appellee.

Before SMITH, TIMBERS and GURFEIN,* Circuit Judges.

GURFEIN, Circuit Judge:

This appeal presents the picture of an able trial judge, the Honorable Charles L. Brieant, faced with the unusual dilemma of conflicting constitutional mandates, the Confrontation Clause of the Sixth Amendment as expressed in the

---

* At the time of the argument, Judge Gurfein was a District Judge of the United States District Court for the Southern District of New York, sitting by designation.

*Bruton* rule [1] and the Double Jeopardy Clause of the Fifth Amendment.

Solomon Glover appeals from a conviction entered on May 8, 1974 in the Southern District of New York after a two-and-a-half-day trial before the Honorable Robert J. Ward and a jury. Glover was found guilty of conspiracy to violate the federal narcotics laws, 21 U. S.C. § 846, under Count 1 of Indictment 73 Cr. 327.[2] He was sentenced to a term of one year imprisonment with a special parole of three years to follow. His principal ground of appeal is that he was "twice put in jeopardy" in violation of the Fifth Amendment.

The indictment in question charged thirteen persons including Glover with the conspiracy mentioned. Four of these defendants, including Glover, were brought to trial before Judge Brieant and a jury. On July 23, 1973 after four days of trial the court severed the case against Glover and directed a mistrial as to him, in the court's own words, "without his consent."

Glover then moved to dismiss the indictment on the ground that a subsequent trial would violate his right not to be put twice in jeopardy. Judge Brieant in a thoughtful opinion denied his motion,[3] and Glover was thereafter tried before Judge Ward and a jury and convicted of the very conspiracy recounted above on the same indictment.

We turn to the events that pose the issue on appeal.

The trial had begun on July 16 before Judge Brieant. Late in the afternoon of Friday, July 20, written reports of three oral statements made by Glover to government agents were shown to Judge Brieant *for the first time* by the Government though they had previously been shown to Glover's attorney.[4] Immediately upon viewing the reports of the oral statements of Glover the Court advised counsel for the Government and all defendants that the statements presented a *Bruton* problem and that he would give counsel "an opportunity to organize your thoughts on it and give me briefly what you have in mind on it."

Though the attorneys were to brief the matter over the weekend, the trial judge in an effort to avoid wasting the jurors' time, ordered the trial to proceed on Friday afternoon.

The Government, on its part, though concededly not a single bit of evidence had been produced against Glover himself thus far, now introduced a witness who testified directly about Glover. As the Court noted, "this testimony was the first evidence received in the trial bearing upon the guilt of Glover." [5]

By Monday, July 23, the trial judge had reached a decision that "it looks pretty clear to me that to admit any of this statement would violate the *Bruton* rule." Glover's attorney at this juncture, consonant with his obligation to his client, refused to move for a sever-

1. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), held that the admission of a co-defendant's confession which implicated the defendant at a joint trial constituted prejudicial error even though the trial court instructed the jury that the confession could only be used against the co-defendant and must be disregarded with respect to the defendant. The decision was based upon "petitioner's constitutional right of cross-examination." 391 U.S. at 137, 88 S.Ct. at 1628. It overruled Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957).

2. This was the only count in which Glover was named.

3. Appellant's Notice of Appeal from Judge Brieant's original order was dismissed by this Court as untimely filed.

4. There was also a fourth similar oral admission of Glover at a prearraignment interview with Assistant U.S. Attorney Feffer. "Oral statements [as in *Bruton*] will present special problems, for there is a risk that the witness in testifying will inadvertently exceed permissible limits." Bruton v. United States, *supra*, 391 U.S. at 144, 88 S. Ct. at 1632. (*White, J.,* dissenting).

5. The Court thought that "Glover's participation in the narcotics distribution conspiracy was minimal. He was at most a low level distributor." Opinion on motion to dismiss indictment p. 6-d.

ance though he had previously anticipated doing so.

The Court then told the Assistant U.S. Attorney that he had two alternatives open to him. "You may either proceed without using the statement or you may move for a severance and mistrial." The Government moved for a severance of the defendant Glover. The Court reluctantly granted the severance because it believed that the statements of Glover would be unduly prejudicial to his co-defendants even with redaction.

■ To the extent that it is relevant to the issue now before us, we believe that Judge Brieant was right in his analysis of the *Bruton* problem as he later expounded it on the subsequent motion to dismiss the indictment. His conscientious regard for the rights of the co-defendants properly led him to the exclusion of the oral statements by Glover. See e. g. United States v. Wilkins, 367 F.2d 990 (2 Cir. 1966); United States v. Bozza, 365 F.2d 206 (2 Cir. 1966) (anticipating *Bruton*).

Having come to that pass, the court had the option of permitting the trial to continue against Glover as well without allowing the admissions to be available to the Government against Glover, or to sever and allow the prosecution to tender Glover's admissions against himself at a second trial against Glover alone. The trial judge chose the second option on the obviously considered view that this would not constitute double jeopardy under the Fifth Amendment. We are constrained to disagree.

The Double Jeopardy Clause of the Fifth Amendment reads as follows:

"nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

■■ The District Court understood that double jeopardy normally attaches upon the empaneling of a jury competent to try the defendant, for it is then that a defendant is "put in jeopardy." Illinois v. Somerville, 410 U.S. 458, 467, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); United States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); Green v. United States, 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); Wade v. Hunter, 336 U.S. 684, 688, 69 S.Ct. 834, 93 L.Ed. 974 (1949); Kepner v. United States, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904).[6] Having been "put in jeopardy," the defendant is thought to have the right to seek a favorable verdict from the jury which he has accepted as satisfactory. See United States v. Jorn, *supra*, 400 U.S. at 486, 91 S.Ct. 547; Downum v. United States, 372 U.S. 734, 736, 83 S.Ct. 1033, 10 L. Ed.2d 100 (1963); Wade v. Hunter, *supra*, 336 U.S. at 689, 69 S.Ct. 834. The negative reason for this solicitude is that to permit the trial to be aborted might lead to mistrials covertly for the benefit of a prosecution that needs strengthening. See e. g. United States v. Kin Ping Cheung, 485 F.2d 689, 691–692 (5 Cir. 1973). A mistrial can operate "as a post-jeopardy continuance to allow the prosecution an opportunity to strengthen its case." Illinois v. Somerville, *supra*, 410 U.S. at 469, 93 S.Ct. at 1073 (per Rehnquist, *J.*), citing Downum v. United States, *supra*.[7]

---

6. An early case rejected the notion that only a final verdict could put the defendant in jeopardy because "there is a wide difference between a verdict given and the jeopardy of a verdict." Commonwealth v. Cook, 6 S. & R. 577, 596 (Pa.1822). This "became the federal rationale." See Sigler, Double Jeopardy 42 n.14 (1969).

7. The mistrial respecting Glover was declared on July 23, 1973. The matter was not sent to the assignment committee of the District Court for assignment to another judge until December 24, 1973. Glover was not convicted upon the retrial until May 8, 1974, more than eight months after the original trial. He had been indicted on April 17, 1973. In recent years, we have come to pay more than casual homage to the right to a speedy trial.

While the rule is firm that jeopardy attaches when the jury is sworn there are exceptions. These exceptions do not lend themselves to "meaningful categorization." See Mr. Justice Rehnquist, speaking for the majority in Illinois v. Somerville, *supra,* 410 U.S. at 464, 98 S. Ct. 1066.[8] In the words of Justice Story, spoken one hundred and fifty years ago, "it is impossible to define all the circumstances, which would render it proper to interfere." United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824).

Despite the difficulty, and perhaps the undesirability of precise classification, it is possible nonetheless to find some common ground in the decisions which have held particular exceptions not to be in violation of the Double Jeopardy Clause of the Fifth Amendment.

It was early decided, for example, that a judge could discharge a jury without jeopardy when it could not agree upon a verdict. United States v. Perez, *supra.* And the reversal of a conviction upon appeal allows the successful appellant to be tried again. United States v. Ball, 163 U.S. 662, 671–672, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); Bryan v. United States, 338 U.S. 552, 560, 70 S.Ct. 317, 94 L.Ed. 335 (1950). Such rules are general and easy to apply.

The more difficult situations arise when the trial is stopped, short of its being given to the jury for a verdict, under circumstances where the consent of the defendant has not been obtained.

It is a hard enough case when there is a single defendant, as we shall see. In the matter before us the difficulty is compounded by the circumstance that we are dealing with a conspiracy trial involving multiple defendants which was aborted before its conclusion as to one alleged conspirator—appellant alone—without his consent. The declaration of a mistrial on such a state of facts has never been considered by the Supreme Court.[9]

Turning first to the case of a single defendant whose trial has been aborted without his consent we have been told that the cases turn on particular facts. We must review these patterns of fact, however, to see whether we can "distill from them a general approach." See Illinois v. Somerville, *supra,* 410 U.S. at 464, 93 S.Ct. at 1070.

It is sometimes loosely said that the test is whether there is "manifest necessity" for the mistrial, building upon Justice Story's dictum in *Perez, supra.* If "manifest necessity" is not treated as a phrase of art, it may be a useful handle.

Under the rubric of manifest necessity a retrial has been permitted when it had been learned that a juror was acquainted with the defendant, Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891); when a juror became ill, United States v. Potash, 118 F.2d 54 (2 Cir. 1941); when one of the jurors was found to have served on the Grand Jury, Thompson v. United States, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146

---

8. The Double Jeopardy Clause of the Fifth Amendment has latterly been extended to state trials under the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), overruling Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937).

9. The Supreme Court has denied certiorari in several multiple defendant cases, in which mistrial had been declared as to one or more defendants without consent, both when the Court of Appeals had denied a claim of double jeopardy, Oelke v. United States, 389 F.

2d 668 (9 Cir. 1967), cert. denied, 390 U.S. 1029, 88 S.Ct. 1420, 20 L.Ed.2d 286 (1968); United States v. Chase, 372 F.2d 453 (4 Cir.), cert. denied, 387 U.S. 907, 913, 87 S. Ct. 1688, 18 L.Ed.2d 626 (1967), and, after *Jorn,* when the Court of Appeals had accepted such a claim, United States v. Tinney, 473 F.2d 1085 (3 Cir.), cert. denied, 412 U. S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 156 (1973). The Supreme Court, however, has not decided on the merits any multiple defendant case involving the declaration of a mistrial before verdict.

(1894); or when the defendant had not pleaded to the indictment after demurring, Lovato v. New Mexico, 242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244 (1916).[10]

This doctrine of manifest necessity went so far as to permit retrial of a court-martial which had been aborted because the advance of our Army in World War II made the desired witnesses no longer readily available under battlefield conditions, Wade v. Hunter, *supra*. Even in that unique battlefield situation, three justices dissented in favor of applying the double jeopardy prohibition.

The most recent of the procedural error cases is Illinois v. Somerville, *supra*. There the Supreme Court held (5 to 4) that where the defendant was brought to trial on an indictment which it developed *before any evidence was presented* could not be cured by amendment under Illinois law and *where a conviction would, in any event, have been overturned on appeal*, a retrial after the declaration of a mistrial over the defendant's objection did not violate the double jeopardy clause. The decision was essentially based upon "the State's established rules of criminal procedure," 410 U.S. at 468, 93 S.Ct. at 1072. No comparable federal rule is involved here.[11]

On the other hand, in Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963) (5 to 4), the Government had failed to have a material witness on hand to testify concerning two counts of the indictment. The trial judge, after the jury was sworn, declared a mistrial over the defendant's objection. "[T]here was a jury empaneled, but there was no evi-

dence offered or heard." See Downum v. United States, 300 F.2d 137, 139 (5 Cir. 1962). The Supreme Court held that double jeopardy had attached when the jury had been empaneled though no prosecutorial misconduct was charged. The discovery by the prosecutor that he had not enough evidence after the jury was empaneled did not prevent double jeopardy from attaching, because the defendant had a right to go to verdict with the jury he had selected.

In Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), the trial judge had declared a mistrial *sua sponte* when he felt that the U.S. Attorney was improperly trying to suggest to the jury that the defendant had committed other crimes. It was common ground below, 282 F.2d 43 (2 Cir. 1960) (*en banc*), that his solicitous interference for the benefit of the defendant was the ground for the declaration of a mistrial. The defendant was retried and convicted. This court affirmed. A majority of the justices affirmed this court "in the particular circumstances," 367 U.S. at 364, 81 S.Ct. 1523, and sanctioned the retrial. The words of Justice Frankfurter for the Court are instructive:

" . . . Suffice that we are unwilling, where it clearly appears that a mistrial has been granted in the sole interest of the defendant, to hold that its necessary consequence is to bar all retrial." 367 U.S. at 369, 81 S.Ct. at 1527.

■ The natural question to follow is whether a mistrial for the benefit of neither the defendant nor the prosecu-

---

10. Mr. Justice Douglas has construed this case to mean simply that a mere irregularity of procedure does not always amount to double jeopardy. See dissent in Gori v. United States, 367 U.S. 364, 371 n.2, 81 S. Ct. 1523, 6 L.Ed.2d 901 (1961).

11. The majority not only limited its ruling to an acceptance of the state's procedural rules, but specifically reaffirmed that "[t]he determination by the trial court to abort a criminal proceeding where jeopardy has attached is not one to be lightly undertaken, since the interest of the defendant in having his fate determined by the jury first empaneled is itself a weighty one. United States v. Jorn, *supra*." 410 U.S. at 471, 93 S.Ct. at 1073.

tion will necessarily save a retrial from the double jeopardy prohibition.

We think that the definitive answer was given by Justice Harlan, speaking for a majority of the Court in United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). And we follow that case as the model closest in point in deciding this one.

In *Jorn* the trial judge declared a mistrial *sua sponte* after the trial had begun when he learned that several government witnesses who were to testify against the single defendant in a tax fraud case had not been sufficiently advised of their own privilege against self-incrimination. The government sought to retry the defendant but the Court below held that double jeopardy had attached.

The Supreme Court ruled that double jeopardy had, indeed, attached. Mr. Justice Harlan stated:

"The Fifth Amendment's prohibition against placing a defendant 'twice in jeopardy' represents a constitutional policy of finality for the defendant's benefit in federal criminal proceedings." 400 U.S. at 479, 91 S. Ct. at 554.

While generally eschewing "categories of circumstances," Justice Harlan quite clearly restricted *Gori, supra,* "to the fact that the judge was acting 'in the sole interest of the defendant.' 367 U.S. at 369, 81 S.Ct. 1523, at 1527." 400 U. S. at 482, 91 S.Ct. at 556.[12]

In the *Jorn* case, on the other hand, Justice Harlan observed that the trial judge "was motivated by the desire to protect the witnesses rather than the defendant." 400 U.S. at 483, 91 S.Ct. at 556.

The policy considerations were expressed by Justice Harlan in these terms:

" . . . the crucial difference between reprosecution after appeal . . . and reprosecution after a *sua sponte* judicial mistrial declaration is that in the first situation the defendant has not been deprived of his option to go to the first jury and, perhaps, [get] an acquittal. On the other hand, where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his 'valued right to have his trial completed by a particular tribunal.' See Wade v. Hunter, 336 U.S. at 689, 69 S.Ct. 834, at 837.

" . . . in the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." 400 U.S. at 484, 486, 91 S.Ct. at 558.

■ The thrust of the opinion is that where the mistrial is not motivated for the benefit of the defendant, and the defendant has done nothing himself to create the problem, he is entitled to his double jeopardy protection. Mr. Justice Stewart, dissenting in *Jorn*, noted that "[c]onversely the mistrial was not requested by the prosecutor." 400 U.S. at 490, 91 S.Ct. at 559. This is a true statement that accents the position of the majority that the prime consideration is the action of the trial judge as it affects the defendant.

The Chief Justice concurred in the majority opinion in *Jorn* on the specific ground that the defendant had done nothing to bring about the mistrial ruling and hence was entitled to claim double jeopardy. 400 U.S. at 478–488, 91 S.Ct. 547.

■ Let us now weave the strands. As the court below (Brieant, *J.*) honestly acknowledged, the mistrial was not granted for the benefit of Glover but for the benefit of his co-defendants. Second, Glover had done nothing to bring

12. See also dissenting opinion of Douglas, J., Gori v. United States, *supra,* 367 U.S. at 370. 81 S.Ct. 1523.

about the *contretemps* that resulted in the declaration of a mistrial. See e. g. United States v. Tinney, 473 F.2d 1085 (3 Cir.), cert. denied, 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 156 (1973). Third, in contrast to *Jorn*, where Mr. Justice Stewart argued from the fact that the prosecutor had not requested the mistrial, here the prosecutor had done just that. Fourth, inadequacy of the government's proof discovered after the jury is empaneled—here the inability to use Glover's admission against him —does not prevent jeopardy from attaching since the defendant had the right to seek a favorable verdict from the first jury. Downum v. United States, *supra*, 372 U.S. at 736, 83 S.Ct. 1033; see also United States v. Walden, 448 F.2d 925, 927–928 (4 Cir. 1971). Fifth, evidence had actually been offered against Glover—beyond the situation in *Downum, supra*, and *Somerville, supra*, where no evidence had been presented. Sixth, a permissive attitude toward mistrials in multiple defendant conspiracy cases could lead to an erosion, bit by bit, of the double jeopardy provision—an undesirable result, we think.

In the federal courts particularly, we have confronted, with continued anxiety, the growth of conspiracy *cum* substantive counts against diverse defendants, not all of whom are charged in all counts. Clear voices have sounded notes of warning. See, e. g., Jackson, *J.*, concurring in Krulewich v. United States, 336 U.S. 440, 453–454, 69 S.Ct. 716, 93 L.Ed. 790 (1949); Douglas, *J.*, dissenting in Schaffer v. United States, 362 U. S. 511, 524, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960); see Developments in the Law:

Criminal Conspiracy, 72 Harv.L.Rev. 920, 978–83 (1959). Note, The Conspiracy Dilemma, 62 Harv.L.Rev. 276 (1948). See also United States v. Mallah, 503 F. 2d 971, at 985–987 (2 Cir. 1974).

Here, Glover, a minor defendant, was charged only in the conspiracy count.

Since certain rules of evidence have been exalted in recent years to the status of constitutional principles, e. g., Bruton v. United States, *supra*; Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the problem of fairly managing a trial with multiple conspirator defendants has become manifestly more difficult.[13]

Here the prosecutor failed to recognize that under the *Bruton* rule, redaction is not always a panacea. The judge ruled, when he was asked for a ruling, that redaction could not cleanse the statement for *Bruton* purposes. The judge would presumably have reached the same result if he had been shown the written reports of Glover's oral statements, with an exposition of what the Government intended to prove, before the trial began. If the Government had sought and obtained the ruling in advance, the trial of Glover could have been severed from the trial of the other defendants, and he could have been tried alone. We have now come full circle from the *Delli Paoli-Bruton* problem. It was not appellant's fault that the prosecutor failed to avail himself of his right under amended Rule 14 of the Criminal Rules to show the statement of the defendant to the judge (*in camera* if necessary) for a *Bruton* ruling before trial.[14]

---

13. We recall the prescient words of Justice Frankfurter: "After all, the prosecution could use the confession against the confessor and at the same time avoid such weighty unfairness against a defendant who cannot be charged with the declaration by not trying all the co-conspirators in a single trial." Delli Paoli v. United States, *supra*, 352 U.S. at 248, 77 S.Ct. at 303 (dissenting opinion).

14. Even in the absence of a severance motion by the defendant, we see no reason why the

prosecutor cannot show the statement to the judge for his ruling in advance of trial. In many cases there will be no need for *in camera* presentation. In this case, the prosecution had freely given Glover's statement to his counsel without any apparent restriction on his showing it to the attorneys for the co-defendants.

Mr. Justice White was prophetic in seeing the problem: "If deletion is not feasible, then the Government will have to choose either not to use the confession at all or to

As the Chief Justice commented in *Jorn, supra,* " . . . this record shows nothing to take appellee's claims outside the classic mold of being twice placed in jeopardy for the same offense." 400 U.S. at 488, 91 S.Ct. at 558.

Nor can we assume that because law enforcement agents were ready to testify to Glover's alleged oral admissions, appellant would necessarily have been convicted by the first jury. The jurors might have disbelieved the agents or disapproved of the conditions under which the agents got the admissions. It simply elides the problem to assume guilt. Cf. Mr. Justice Marshall's dissent in *Somerville, supra,* 410 U.S. at 481, 93 S.Ct. 1066.

The danger lies in the gradual erosion of constitutional doctrine. An ambiguous constitutional rule in favor of personal liberty should not be as malleable as an ambiguous statute. Many and unpredictable are the sources of conflicting rights among themselves in the trial of co-defendants, especially in conspiracy cases. We are reluctant to open the field to mistrial for the benefit of one defendant at the cost of the valued right of another defendant to go to the jury of his selection in the circumstances of this case.

In this type of case, the means for the prosecution to protect its legitimate interests are generally at hand. It will be worth the possible sacrifice of public justice in the case of Glover if this decision alerts prosecutors to enlist the willing aid of trial courts fully to explore *Bruton* problems *before* the jury comes into the box.

We recognize that the District Judges have given thoughtful consideration to this novel problem.[15]

In the particular circumstances shown, the conviction is reversed. It is ordered that the indictment against Glover be dismissed.

try the defendants separately." Bruton v. United States, *supra,* 391 U.S. at 143–144, 88 S.Ct. at 1632 (dissenting opinion). See Note, Joint Single Trials under Rules 8 and 14 of Federal Rules of Criminal Procedure, 74 Yale L.J. 553, 564–65 (1965).

15. It would be stultifying to treat this appeal as involving "abuse of discretion." We do not cast the issue in those terms. In this case, the court below did not act erratically as the judges in some other cases cited may have. As Mr. Justice White pointed out in his dissent in *Somerville, supra,* the cases of *Downum* and *Jorn* "made it quite clear that the discretion of the trial court to declare mistrials is reviewable and that the defendant's right to a verdict by his first jury is not to be overridden except for 'manifest necessity.'" 410 U.S. at 474, 93 S.Ct. at 1075.