UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

JAMES LINCOLN JOYCE,
  *Defendant-Appellant.*

No. 02-4588

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
Frank W. Bullock, Jr., District Judge.
(CR-00-283)

Argued: February 27, 2003

Decided: September 17, 2003

Before WIDENER, WILKINSON, and NIEMEYER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** William Carlton Ingram, Jr., OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant. Lawrence Patrick Auld, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Louis C. Allen, III, Federal Public Defender, Greensboro, North Carolina, for Appellant. Anna Mills Wagoner, United States Attorney, Steven H. Levin, Assistant United States Attorney, Rami S. Madan, Third Year Law Student, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

The defendant, James Joyce, appeals his conviction for possession of firearms as a convicted felon in violation of 18 U.S.C. § 922(g)(1). Joyce's first trial ended in a mistrial. Joyce now contends that the district court declared the mistrial in bad faith, thereby exposing Joyce to double jeopardy. Joyce also challenges the jury instructions on constructive possession given during his second trial and further contends that the government presented insufficient evidence regarding the element of possession. We conclude that the district court did not abuse its discretion by declaring a mistrial, which the defense had stated it was prepared to request and to which it did not object. We also are of opinion that the jury instructions in the second trial adequately stated the controlling law on constructive possession and that the evidence presented was sufficient to support the jury's verdict that Joyce possessed the firearms.

I.

On January 10, 2000, law enforcement officers executed a search warrant on a home occupied by James Joyce, his girlfriend, Karen Lanier, and Joyce's son from a previous marriage. When officers arrived they searched the home for marijuana and discovered two firearms in a dresser containing only men's clothing located in a bedroom shared by Joyce and Miss Lanier. One firearm, a .38 caliber Taurus revolver, was wrapped in a T-shirt; the other firearm, a .25 caliber ACP handgun, was found in another drawer which contained either socks or underwear.

On August 28, 2000, a grand jury indicted Joyce with knowingly possessing a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1). On September 25, 2000, a superseding indictment was filed that added an additional count charging Joyce

with willfully, knowingly, and intentionally possessing with the intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D).[1]

On November 14, 2000, Joyce pleaded guilty to Count Two (the drug possession count) and went to trial on Count One (the firearms possession count). The issue in dispute at the trial was whether Joyce knowingly possessed the two firearms. On November 15, 2000, the judge instructed the jury, including actual and constructive possession, and he released the jury to deliberate at 10:40 a.m.

During deliberations, the jury submitted two questions to the court: "Can we get a definition of 'constructive possession'?" and "Do we have to prove intent?" In response to the questions, the judge repeated the instructions on constructive possession and intent and stated that the jury should not give more emphasis to that portion of the charge than the entire body of the charge. The jury went out again to deliberate at 11:25 a.m.

At 12:40 p.m., the jury submitted two more questions, one of which asked whether they could go to lunch. The court allowed them to go to lunch and told them that their second question would be answered after they returned from lunch. After the jury was dismissed for lunch, the court discussed the jury's second question, "Is there a legal definition of intent?" with the attorneys. The court examined case law on constructive possession from the Fifth, Sixth, Eighth, and Tenth Circuits and concluded that "[n]one of those cases speak of intent to do anything at any particular time." The court further stated that he could not find very much Fourth Circuit case law on the issue of constructive possession and intent. When the jury returned from lunch, the court answered the jury's question by stating that there was nothing more that it could say to answer their question on the definition of intent.

---

[1]During the January 10, 2000 search, officers also had found two pounds of marijuana outside the residence. In addition, officers discovered a set of triple beam scales used to weigh contraband located in the bathroom next to Joyce's bedroom and six plastic bags containing marijuana residue in the kitchen of the residence.

At 2:00 p.m., the jury again left to deliberate. While the jury was deliberating, the court continued to discuss the jury's question with the parties. The jury then sent in a note stating, "We are dead-locked. What are your suggestions?" The judge told the parties that he would give the jury an *Allen*[2] charge, ask them to deliberate further, and if the jury was still deadlocked, he was inclined to discharge them. The defense indicated that it was prepared to move for a mistrial based on the jury's inability to reach a decision. The government stated that its only concern was that it would like to be able to retry the case at a later date. The court indicated that he was "not interested in retrying" the case and wanted a verdict. The court then gave the jury an *Allen* charge, to the wording of which there was no objection.

After the jury deliberated further, the court received a note stating that the jury was still divided and that it did not appear that they were going to be able to reach a verdict. The note apparently gave the division of the jury, which fact was not related to the attorneys by the judge. The court then declared a mistrial, to which neither party objected.

On December 4, 2000, a second jury trial was held. During the trial, Billy Parker, Jr., a Sergeant with the Rockingham County Sheriff's Department, testified that he and three other law enforcement officers searched Joyce's home on January 10, 2000. Parker testified that during the search Joyce had told him that the rent for the home was in his name and that his girlfriend and son also lived there. Parker further stated that he discovered the .38 caliber Taurus revolver wrapped in a T-shirt on a shelf in the bedroom dresser which contained only men's clothing.

Phillip Smith, a member of the Rockingham County Sheriff's Department, who also searched Joyce's home, testified that he had found the .38 caliber Taurus revolver on the right side of the dresser wrapped in a T-shirt. Smith also testified that another revolver was found in a drawer on the left side of the same dresser. Smith further stated that the dresser in which both firearms were discovered contained only men's clothing.

---

[2]*Allen v. United States*, 164 U.S. 497 (1896), concerns a charge to a jury unable to reach a decision.

The government also called Ricky Navarro, a special agent in the latent evidence section of the North Carolina State Bureau of Investigations, who testified as an expert in the field of latent fingerprint examination. Agent Navarro testified that he lifted a whorl type fingerprint pattern from one of the guns but he was unable to identify Joyce as being the contributor or eliminate Joyce as the contributor of the fingerprint.

The defense called Miss Lanier, who testified that she owned the mobile home that had been searched. Miss Lanier also testified that she had purchased the .38 caliber Taurus revolver from a man named James Brooks who died in 1990 and that she had received the .25 automatic as gift from her fiance, a man named Jerry Merriman. Miss Lanier further testified that she kept the two firearms between the mattress and box spring of her bed when Joyce and she first began living together. She stated that on December 24, 1999, she received new bedroom furniture and placed both guns in the sock drawer of the new bedroom dresser. On cross-examination, Miss Lanier testified that she did not remember wrapping the .38 caliber in a T-shirt and also testified that the T-shirt belonged to Joyce.

Sergeant Parker testified that Miss Lanier told him that she had received the .38 caliber from a man who had died but that she did not have any paperwork to prove that she had purchased the gun. Parker further stated that Miss Lanier told him that she had received a .25 caliber from a man named Merriman who had lived in Martinsville, Virginia, but she could not tell Parker his address or phone number. Parker testified that he had attempted to trace the information given to him by Miss Lanier by running the names through a computer system but Parker could not locate the individuals, nor could he find their names in the computer system.

On December 5, 2000, the jury returned a guilty verdict. On March 26, 2001, the district court imposed a 144 month term of imprisonment, which included 72 months on Count One and 72 months on Count Two, to run consecutively. The court also imposed seven years of supervised release and a $200 special assessment. On July 30, 2002, Joyce filed a notice of appeal.

On February 27, 2003, this case was argued orally. After oral argument, on March 24, 2003, Joyce's appellate counsel filed a motion to withdraw as counsel.[3] On April 9, 2003, we granted counsel's motion to withdraw and allowed Joyce to proceed *pro se*. We also directed Joyce to file a supplemental brief on or before May 8, 2003, advising the court which issues presented for appeal he wished this court to consider. On April 28, 2003, Joyce filed a supplemental brief in accordance with our instructions, asking us to address the issues of double jeopardy, insufficiency of the evidence supporting his conviction, and erroneous jury instructions, which he had raised in a *pro se* brief filed on January 3, 2003.[4]

## II.

On appeal, Joyce argues that the judge declared a mistrial in bad faith, thereby exposing Joyce to double jeopardy during his second trial. Joyce argues that the judge knew that he had incorrectly instructed the jury on constructive possession and that he had held the government to a more stringent standard than required by the Fourth Circuit. Joyce further asserts that the judge also believed that there was sufficient evidence upon which to convict Joyce and he knew that a majority of the jurors wanted to acquit Joyce. As a result, Joyce contends that the court declared a mistrial in order to "afford the prosecution a more favorable opportunity to convict [him]." See *Downum v. United States*, 372 U.S. 734, 736 (1963). We review the district court's decision to grant a mistrial for an abuse of discretion. See *United States v. West*, 877 F.2d 281, 287-88 (4th Cir. 1989).

As the Court has stated, the "general rule is that the defendant's motion for, or consent to, a mistrial removes any double jeopardy bar to reprosecution." *Oregon v. Kennedy*, 456 U.S. 667, 683 (1982) (Powell, J., concurring). An exception to this rule exists for prosecutorial or judicial conduct provoking a mistrial. See *United States v. Ham*, 58 F.3d 78, 83 (4th Cir. 1995) (citing *Kennedy*, 456 U.S. at

---

[3]Joyce also filed a motion to strike the supplemental brief filed on March 3, 2003. We grant this motion.

[4]If our statement of facts and the procedure followed may seem unduly detailed, it has been because of the insistence of Joyce that the district court acted in bad faith in declaring a mistrial in the first trial.

676). Therefore, the defense having stated that it was prepared to move for a mistrial and not objecting once a mistrial was declared, double jeopardy would not bar Joyce's second trial unless the judge acted in bad faith as Joyce claims.

We are of opinion that the district judge did not act in bad faith. After the jury indicated that it was deadlocked and the defense stated that it was prepared to move for a mistrial, the judge stated that he believed that a mistrial was not then necessary but the jury should be given an *Allen* charge and be allowed to deliberate further. The judge did not declare a mistrial until he had received another note from the jury indicating that it was still divided and that it did not appear as though they were going to reach a verdict. Thus, the judge's decision to declare a mistrial was not an abuse of discretion, nor did the mistrial bar reprosecution. There is simply no evidence of bad faith in the decision of the district judge declaring a mistrial.

## III.

Joyce also challenges the jury instructions given at his second trial.[5]

---

[5]While the argument of Joyce is not altogether clear, it is clear that he urges that the district court erred by not repeating the instructions given at the first trial. It may be that the argument is that the case of *United States v. Blue*, 957 F.2d 106 (4th Cir. 1992), is more favorable to his case than the instructions given. *Blue* was set in facts entirely different from those here, and in a case more factually similar to the case at hand, *United States v. Gallimore*, 247 F.3d 134 (4th Cir. 2001), that same argument was specifically rejected by this circuit at 247 F.3d 134, n.1, which case, incidentally, included language describing a § 922(g)(1) violation almost letter for letter in the words of the instruction given in the second trial of this case.

If the real objection is the omission from the instructions in the second trial of the words "power and intention at a given time," Br. of Jan. 3, 2003, p.23, that phrase was apparently picked up from the case of *United States v. Terry*, 911 F.2d 272 (9th Cir. 1990), which is not the law in this circuit. The district court did not err by omitting it from the instructions in the second trial.

In all events, because the instructions in the second trial were correct, the district court did not err in declining to repeat the instructions given in the first trial.

He contends that the court erred by failing to focus on his intent and by failing to include an instruction on his intent to exercise dominion or control over the firearms. Joyce further argues that the court should have instructed the jury that it must find evidence that Joyce did, in fact, exercise dominion and control over the firearms. Finally, Joyce argues that the district court erred by not giving the instructions that the court had given during Joyce's first trial, which focused on intent. In reviewing jury instructions, we "accord the district court much discretion and will not reverse provided that the instructions, taken as a whole, adequately state the controlling law." *Teague v. Bakker*, 35 F.3d 978, 985 (4th Cir. 1994).

The district court instructed the jury with regard to intention and possession as follows:

> With respect to the second element, that the defendant knowingly possessed the firearm. The term "knowingly" means that the act was done voluntarily and intentionally and not because of mistake or accident.
>
> * * *
>
> Now the law recognizes two kinds of possession, actual possession and constructive possession. The government relies on constructive possession in this case. Constructive possession exists when a person has the power to exercise dominion or control over a thing or the premises in which the thing is located and has knowledge of the things present. Mere presence of a thing without the right to exercise dominion or control over it is not sufficient to establish constructive possession.
>
> The law also recognizes that possession may be sole or joint. If one person alone has constructive possession of a thing, possession is sole. If two or more persons share constructive possession, as that term is used these instructions, is present if you find beyond a reasonable doubt that the defendant had constructive possession either alone or jointly with others.

We are of opinion that the district court did not err by giving these instructions. We have held that proof of actual or exclusive possession of a firearm is not necessary and that proof of constructive or joint possession is sufficient to establish a violation of § 922(g)(1). See *United States v. Gallimore*, 247 F.3d 134, 136-37 (4th Cir. 2001). Furthermore, we held that the "[g]overnment may prove constructive possession by demonstrating that the defendant exercised, or had the power to exercise, dominion and control over the item." *Gallimore*, 247 F.3d at 137 (internal citations omitted); see also *United States v. Shorter*, 328 F.3d 167, 172 (4th Cir. 2003). Thus, we are of opinion that the district court's jury instructions, taken as a whole, adequately stated the controlling law on constructive possession under 18 U.S.C. § 922(g)(1).

## IV.

Finally, Joyce argues that the government presented insufficient evidence during the second trial to convict him of possession of a firearm in violation of 18 U.S.C. § 922(g)(1). In reviewing a conviction for sufficiency of the evidence "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the government to support it." *Glasser v. United States*, 310 U.S. 60, 80 (1942). To establish a violation of 18 U.S.C. § 922(g)(1), the government must show, beyond a reasonable doubt, that (1) the defendant was a convicted felon at the time of the offense; (2) the defendant voluntarily and intentionally possessed a firearm; and (3) the firearm traveled in interstate commerce at some point. See *Gallimore*, 247 F.3d at 136. Joyce challenges only the sufficiency of the evidence supporting the requirement that he voluntarily and intentionally possessed the two firearms.[6]

The evidence presented at trial suggests that, although Joyce did not own the mobile home in which the firearms were discovered, Joyce was a regular occupant of the home. Joyce also slept in the bedroom in which the weapons were found. The government also presented evidence that the firearms were located in a dresser containing

---

[6]The parties stipulated that Joyce had been convicted of a felony on June 2, 1995 in Rockingham County Superior Court. The parties also stipulated that both firearms traveled in interstate commerce.

*only* men's clothing. In addition, Miss Lanier testified that the T-shirt in which the .38 caliber was wrapped belonged to Joyce and that she did not remember wrapping the firearm in the T-shirt. Miss Lanier also testified that she had placed both firearms in the same dresser drawer, while both officers, who had discovered the firearms, testified they found the firearms in two different areas of the dresser. Furthermore, although Agent Navarro could not conclusively say that a whorl type fingerprint found on the .38 caliber came from Joyce, Navarro also could not eliminate Joyce as the contributor of the fingerprint. Finally, the evidence supports a jury determination that Joyce had knowledge of the firearms because they were located in a dresser containing his clothing, where he would have seen them. See *United States v. Kitchen*, 57 F.3d 516, 519-21 (7th Cir. 1995) (finding sufficient evidence of constructive possession where firearm was found in bedroom dresser in home defendant shared).

Thus, after viewing the evidence in the light most favorable to the government, we are of opinion that the government presented substantial and sufficient evidence to support the verdict.

Accordingly, the judgment of the district court is

*AFFIRMED*.