**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 04a0055n.06
Filed: October 28, 2004

03-1594

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

DONTE SHONTEL PRYOR )
)
    Petitioner-Appellant, )
)
v. ) ON APPEAL FROM THE UNITED
) STATES DISTRICT COURT FOR THE
BARBARA BOCK, Warden, ) EASTERN DISTRICT OF MICHIGAN
)
    Respondent-Appellee. )

Before: DAUGHTREY, GIBBONS, and COOK, Circuit Judges.

**PER CURIAM.** The petitioner, Donte Shontel Pryor, is a Michigan state prisoner who filed a petition for habeas corpus relief in federal court, pursuant to 28 U.S.C. § 2254, in which he claims that by forcing him to trial before a second jury after his first trial ended in a mistrial, the state court violated the Fifth Amendment's Double Jeopardy Clause. At his second trial, Pryor was convicted of assault with intent to commit murder, carrying a concealed weapon, and possession of a firearm during the commission of a felony. That conviction was upheld by the Michigan Court of Appeals, and the Michigan Supreme Court denied leave to appeal. Pryor now appeals the district court's order denying habeas relief, challenging the court's determination that there was no constitutional violation in connection with his trial and conviction.

During jury selection at Pryor's first trial, the prosecution informed the trial judge that a subpoenaed witness, Police Officer Christopher Crance, was out of state and would not be available to testify. According to the judge's later ruling, no claim was made by the attorneys for Pryor or his co-defendant that they could not proceed without Officer Crance at the time of that announcement. After the jury was selected and sworn, however, the defense attorneys indicated that they considered Crance to be a necessary witness and, implicitly, that they were not willing to go forward without him as a witness. By contrast, the prosecutor indicated that he was not was not planning to call Officer Crance. The following colloquy then took place among Douglas Lloyd, the assistant prosecuting attorney, Joseph Filip, Pryor's counsel, and Daniel Reid, representing Pryor's co-defendant, Deonco Franklin:

> Mr. Reid: We may have some difficulty with that, your Honor. I mean, if he was, in fact, the first officer there and the one who did the initial interview [of the victim], he is, in fact, a necessary party in this matter.
>
> There are certain questions that I would like to ask that person that I think may be critical.
>
> Mr. Filip: Your Honor, our position for Mr. Pryor is the same. Christopher Crance did interview Mr. Weaver, he also interviewed [three other people].
>
> We do anticipate there to be numerous inconsistencies in Mr. Weaver's testimony here with what he told police officers before, as well as his preliminary examination transcript, and I had fully anticipated to use Officer Crance for impeachment of Mr. Weaver, at least Mr. Weaver.
>
> The Court: Well, I guess I have no alternative, then, but to have a mistrial and I guess we should charge this - can we charge this to Officer Crance in some way? . . . I want him held in contempt

|              | of court.   When he hits town, I don't care [if] he's a police officer or not, he'll be brought in here, and he's going to be in contempt of court. |
| ------------ | ------- |
| Mr. Lloyd:   | That's fine. |
| The Court:   | Which means stick him in jail.  It's just crazy. |
| Mr. Filip:   | Your Honor, I'd have to - are you declaring a mistrial? |
| The Court:   | Yes, sir. |
| Mr. Filip:   | I would have to, on behalf of Mr. Pryor, then, ask for dismissal of the charges because this is the fault of the prosecution.  I understand Mr. Lloyd's position and to be honest with you also understand how this works in terms of the subpoena, the officer not appearing, but Mr. Pryor has been in jail since his arrest by Officer Rogers some time ago.  He cannot post bond at the level it is and I think this would put him in jeopardy with the jury now sworn. |
| Mr. Reid:    | Your Honor, I would likewise concur with Brother Counsel in that regard.  We, in fact, are ready to proceed to trial at this time.  We, in fact, made out a schedule available for this particular day and time . . . . |
| Mr. Lloyd:   | Your Honor, I have a returned subpoena in this matter.  And while it is defense counsel's choice to wish to attack me, I have done what is required under the court rules which is to do the normal process of discovery in finding our witnesses. |
| The Court:   | Is he going to be gone all week? |
| Mr. Lloyd:   | Thursday, sometime on Thursday he's supposed to be back. |
| The Court:   | We'll be through by then.  Okay. Well, we'll have to reset a new trial date. |
| Mr. Reid:    | Is the Court going to rule in regards to defense counsel's motion for dismissal? |
| The Court:   | No.  I better deny that, through no fault of the prosecutor in this person not being here . . . . |
| Mr. Reid:    | And also while the Court is looking [into the possibility of releasing the defendant on personal recognizance], we would, in fact, renew our motion for dismissal.  We would say since |

> the jury has, in fact, been sworn, the jeopardy does in fact attach in this matter.

The Court: Okay.  If you want to bring that up, bring it up by way of a motion.

Mr. Reid: I will do that, your Honor.

Mr. Lloyd: Your Honor, I'm going to object, obviously, at this time to even the bringing of a motion.  This information was given to the Court and to defense parties before a jury was sworn in this matter . . . .

Mr. Filip: It's unfortunate, it's nobody's fault.  I can understand but I think it's the prosecution's fault, don't get me wrong, and I think as a result, it's double jeopardy.  Thank you . . . .

The Court: We'll set [the new trial] for the twenty-fourth and again, if you want to bring any motion based upon alleged jeopardy, bring that Friday when you're going to be down here on the other one.

Mr. Reid: We will bring it then, your Honor.  Thank you.

The jury was brought into the courtroom and discharged.  At a subsequent hearing, the trial judge denied the petitioner's motion to dismiss the case on double jeopardy grounds.  *People v. Pryor*, No. 97-081127-FC (Jackson County Circuit Court, Nov. 7, 1997).  The second trial was held three weeks later, at which time the defendant was convicted and sentenced to a term of 25-50 years in prison.

On direct appeal, the Michigan State Court of Appeals rejected the Petitioner's double jeopardy argument and affirmed the conviction, saying:

> When a mistrial is declared, retrial is permissible under double jeopardy principles where (1) manifest necessity required the mistrial, or (2) the defendant consented to the mistrial and the mistrial was caused by innocent conduct on the part of the prosecutor, or judge or by factors beyond their control. *[People v. Mehall*, 557 N.W.2d 110, 112 (1997)];*People v. Dawson*,

>427 N.W.2d 886, 894-95 (1988) . . . . Because we conclud[e] that [the] defendant impliedly consented to the mistrial, we hold that [the] defendant's retrial did not violate the prohibition against double jeopardy.

*People v. Pryor*, No. 208976, 1999 WL 33444290 at *1 (Mich. App. May 21, 1999) (per curiam).

Following the Michigan Supreme Court's denial of leave to appeal, *see People v. Pryor*, 613 N.W.2d 722 (Mich. 2000) (table), Pryor filed the instant petition for a writ of habeas corpus in federal court based on his double jeopardy claim.

We review the district court's decision to deny habeas relief de novo, *see Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), and accept the district court's factual findings if they are not clearly erroneous. *See Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir. 2000). In addition, we are constrained by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which restricts a grant of habeas relief unless the adjudication of the claim:

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

Under *Williams v. Taylor*, 529 U.S. 362, 405 (2000), a state-court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite

to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result. A state-court decision involves an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or if the state court either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407. The reasonableness of the state court's opinion is judged by an objective rather than subjective standard. *See id.* at 410.

The petitioner in this case essentially reasserts the same arguments that were raised before the district court. He contends first that the ruling of the Michigan Court of Appeals is both "contrary to" and an "unreasonable application of" controlling Supreme Court law because the court improperly focused on implied consent rather than examining whether the defendant retained primary control over the proceedings. *See United States v. Dinitz*, 424 U.S. 600, 609 (1976) (holding that defendant can consent to a mistrial only where defendant retains "primary control over the course to be followed"). Despite the defendant's contention that "implied consent theory is not a constitutional legal basis recognized by the Supreme Court to allow retrial," we have held that a defendant can impliedly consent provided that the court undertakes "an analysis informed by the weighty considerations inherent in criminal jeopardy." *Glover v. McMackin*, 950 F.2d 1236, 1240 (6th Cir. 1991) (citing *Arizona v. Washington*, 434 U.S. 497, 503-04 (1978)). In this case,

the district court undertook just such an analysis and thoroughly explained why the decision of the Michigan Court of Appeals is not an unreasonable application of *Dinitz* or any other Supreme Court or Sixth Circuit precedent.

The petitioner also argues that his petition should be granted because his case is substantially indistinguishable on the facts from that of *Downum v. United States*, 372 U.S. 734 (1963). In that case, the prosecutor moved to postpone trial just after the jury was empaneled and sworn because its key witness on two counts of the indictment had not been subpoenaed and was not present. The defendant countered with a motion to dismiss those two counts and proceed to trial on the remaining counts. The trial court denied the defendant's motion and discharged the jury over the defendant's objection. When trial was resumed two days later before a different jury, the defendant again objected, this time on the ground of double jeopardy. Following conviction and appeal, the Supreme Court held that retrial under these circumstances was a violation of the Double Jeopardy Clause and dismissed the indictment. *Id.* at 737-38. We think that the district court was correct in deciding that the state court's decision in this case was not contrary to the Supreme Court's decision in *Downum* because, as the district court explained, Pryor's case is obviously distinguishable from *Downum* on its facts.

However, we also agree with observations by both the Michigan Court of Appeals and the district court that the state trial judge in Pryor's case may have acted somewhat precipitously in declaring a mistrial without exploring what other options might have been available and satisfactory to the defendants. Nevertheless, the judge obviously responded

to what reasonably appeared to be the wishes of defense counsel not to proceed in the absence of a witness that they considered necessary to their case. Moreover, we note that there was no objection to the judge's *sua sponte* decision to halt the trial, but only a motion to dismiss the charges once the trial was actually halted. The record suggests that the petitioner may have been attempting "to have his cake and eat it too" by creating a basis for a mistrial, allowing the court to declare a mistrial without objection, and then immediately moving to dismiss the charges on double jeopardy grounds. Without a doubt, this conduct reflects defense control over the course of trial.

Because the relevant case law and the reasons why judgment in favor of the defendants should be entered in this matter have been accurately and adequately identified and thoroughly analyzed by the district court, the issuance of a detailed opinion by this court would be duplicative and would serve no useful purpose. We therefore AFFIRM the judgment of the district court for the reasons set out in its memorandum opinion of April 3, 2003.