JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Kenneth Owens, appeals the decision of the lower court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.
 I. {¶ 2} On February 22, 2007, appellant was indicted with a four-count indictment by the grand jury. Each count was a felony of the fifth degree. Count one was drug trafficking wherein the state alleged that appellant did knowingly sell, or offer to sell, crack cocaine, a schedule II drug, in an amount less than one gram. Count two was drug trafficking wherein the state alleged that appellant did knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute crack cocaine, a schedule II drug, in an amount less than one gram. Count three was drug possession wherein the state alleged that appellant possessed crack cocaine, a schedule II drug, in an amount less than one gram. Count four was possession of criminal tools wherein the state alleged appellant possessed money with the intention to use it in the commission of a felony.
 {¶ 3} The court held pretrial conferences on March 14, March 26, and April 5, 2007. The case was originally set for trial on April 20, but the court continued it to April 26 because it was in trial on another case. On April 26, the court conducted a jury trial on the four-count indictment, and on April 27, 2007, the jury found appellant guilty of counts one and three — the possession of crack cocaine and the sale thereof. On April 30, 2007, the court sentenced appellant to 11 months on each count, to run consecutively to each other. *Page 4 
 {¶ 4} On January 10, 2007, at 11:00 p.m., vice-detective Robert McKay, a 13-year veteran of the Cleveland Police Department, was the lead detective in a controlled purchase of crack cocaine in Cleveland. Detective McKay used a confidential informant to purchase crack cocaine from appellant. The informant had a marked and photocopied police $20 bill on him, as well as a voice transmission device that was not capable of recording, but did give police a real time monitor of the voices. The informant was sent out into the area of East 131st Street and Marston Avenue.
 {¶ 5} The informant went to the doorway of a Baptist church in the area and was approached by appellant. Appellant asked the informant what he needed, the informant asked for a "twenty," and then there was a hand-to-hand exchange wherein appellant gave the informant one rock of crack for the photocopied $20 bill. Afterward, the informant returned to the police car and gave Detective McKay the crack cocaine he purchased. Detective McKay identified appellant as the drug seller in court before the jury.
 {¶ 6} The crack cocaine was tested by the Cleveland police scientific investigation unit and found to be positive for crack cocaine, .08 grams. Appellant stipulated to this fact at trial — that the drugs were tested and found to be positive for crack cocaine and weighed .08 grams, as evidenced in the lab report. Appellant did not object to the method in which the stipulation was read by the prosecutor or the trial judge.
 {¶ 7} After the purchase was completed, Detective McKay radioed take-down cars that were strategically positioned nearby to arrest appellant. Appellant walked into an open field, met up with another male, made another hand-to-hand transaction with the male *Page 5 
through a chain-link fence, and then proceeded back toward East 131st Street. Appellant never left the sight of Detective McKay. Detectives Roddy, Raspberry, Hall, and Evans arrested appellant. Detective Roddy and Hall testified that, upon arrest, appellant had the photocopied $20 bill on his person, as well as an additional $238. At trial, Detective McKay and Detective Roddy identified the $20 bill found on appellant and matched it with the photocopy.
 {¶ 8} The trial court sentenced appellant to 11 months on each count of which he was convicted, one count of drug trafficking and one count of drug possession, to be served consecutively. In making the determination to sentence appellant in this manner, the trial court went over the following facts: 1) that appellant was arrested in Euclid for aggravated vehicular assault (basis for appellant's charges and convictions in an unrelated case) and was given a bond; while out on bond, he committed these crimes of drug trafficking and possession; 2) appellant's prior record consisted of CR-329133, wherein he was sentenced to 4 to 15 years in prison for felonious assault; CR-326357, for which appellant was sentenced to two years in prison for carrying a concealed weapon; and CR-323180, wherein he received another 4-to 15-year sentence for felonious assault. The total of these sentences led appellant to serve 11 years in prison, and he was on postrelease control as of June 2006. Based on these facts, the trial court made a determination that consecutive sentences are necessary to protect the public and to adequately punish the offender. Appellant now appeals.
 II. *Page 6 {¶ 9} Appellant's first assignment of error provides the following: "The trial court abused its discretion and violated appellant's federal and state constitutional rights to due process and counsel when it summarily rejected appellant's request for new counsel."
 {¶ 10} Appellant's second assignment of error provides the following: "The trial court violated appellant's federal and state constitutional rights to trial by jury and due process when it instructed the jury that it need not consider an essential element of the offenses."
 {¶ 11} Appellant's third assignment of error provides the following: "The trial court committed error and violated the state and federal prohibition on double jeopardy by convicting and sentencing appellant of both drug possession and drug trafficking."
 {¶ 12} Appellant's fourth assignment of error provides the following: "Appellant's sentence is contrary to law and violative of due process because it is disproportionate to the seriousness of the offense conduct."
 III. {¶ 13} Appellant argues in his first assignment of error that the lower court abused its discretion and violated his rights when it summarily rejected his request for new counsel.
 {¶ 14} Appellant argues that the lower court deprived him of his constitutional right to counsel and due process by not allowing him to fire his attorney after the jury was sworn. We find appellant's argument to be without merit. A criminal defendant, while afforded a constitutional right to counsel, does not have a constitutional right to dismiss his counsel on the day of trial after the jury was sworn. *Page 7 
 {¶ 15} Appellant originally stated that the corrections officers did not give him a chance to dress for court. The court asked appellant if he knew he was coming for trial and he said, "I'm just coming up here to dismiss my lawyer."[1] The court asked Officer Morgan about this and he said that appellant told him he did not want to dress for trial.[2]
Eventually, appellant stated he wanted to dress for trial. Appellant then informed the court that he wanted to fire his attorney. Since it was the day of trial and the jury had already been sworn, the court gave appellant the option of going ahead with his current attorney or proceeding pro se, which is also his constitutional right. Appellant then tried to tell the court that his attorney did not speak with him or advise him about his case. The court told appellant that it did not want to delve into the attorney-client privileged conversations and told appellant that from the court's observations of defense counsel during the pendency of the case, defense counsel had been working very hard for him. Thereafter, the court began voir dire.
 {¶ 16} By refusing to excuse defense counsel, the trial court did not deny appellant the right to trial counsel, but merely gave him the right to be his own counsel or to choose another attorney. Because the jury had been sworn, jeopardy had attached. Downum v. United States (1963),372 U.S. 734, 10 L.Ed.2d 100, 83 S.Ct. 1033. Given that jeopardy had attached, we are inclined to find as other districts, that the standard of review is abuse of *Page 8 
discretion. See State v. Kendrick (Nov. 21, 1991), Cuyahoga App. No. 59381; Robards v. Rees (1986), 789 F.2d 379.
 {¶ 17} Here, appellant only made blanket assertions about communications. In addition, appellant's own attorney even said one assertion was not true. Appellant did not present the issue to the court until the day of trial. The court then properly inquired as to why appellant's attorney should be fired at this late date. However, the court is not required to grant the request because appellant wants new counsel. To rule that a trial court has no discretion and must grant a request for new counsel on the day of trial would empower all criminal defendants to delay their proceedings indefinitely with an exercise of their constitutional rights each day a trial is set.
 {¶ 18} Appellant also argues that the trial court denied appellant a meaningful hearing on the issue and therefore denied him of a right he does not have, the right to another court-appointed attorney on the day of trial and after jury selection, based solely on his desire to have another attorney. Appellant failed to show he should have been granted new counsel because current counsel would violate his rights by remaining on the case.
 {¶ 19} Based upon the record in this case, the status of the trial, the lateness of the request, the lack of supporting content in the request, and the obvious delay to the trial, the trial court did not abuse its discretion in denying appellant's request for new counsel.
 {¶ 20} Appellant's first assignment of error is overruled. *Page 9 
 {¶ 21} Appellant argues in his second assignment of error that the trial court violated appellant's constitutional rights to trial by jury and due process when it instructed the jury that it need not consider an essential element of the offenses.
 {¶ 22} Appellant argues the court erred by instructing the jury that it must accept appellant's stipulation as true. Specifically, appellant argues that the trial court erred when it instructed the jury that appellant stipulated that the substance in question was crack cocaine and, therefore, the jury should not consider this question during its deliberations.
 {¶ 23} At trial, the appellant stipulated to the lab report and its application to the drugs
tested by the Cleveland Police Department's scientific investigation unit as follows:
 "MR. FILIATRAUT (Prosecutor): Your Honor, there's a stipulation between the parties that State's exhibit 3, the drugs, have been tested by SIU, Cleveland SIU, Report number 501271, and that they are-they are stipulating to the report, State's exhibit 4 and-.
 THE COURT: What does the report read?
 MR. FILIATRAUT: Report, lab number 501271, bag number 389983, RMS number 07-12707, one piece of off white, rock like material, the weight .08 grams, analyzed and found to be positive for cocaine, class two. And that's Koeth, K-O-E-T-H, the SIU tester.
 THE COURT: Is that correct?
 MR. GAUNTNER (appellant's attorney): That's correct your Honor.
 THE COURT: Ladies and gentlemen, that simply means that the parties have eliminated the need to call the witness from the Scientific Investigation Unit of Cleveland Police Department who tested the off white material and found it to be in the exhibit bag to be rock, containing cocaine substance. That's all. That's stipulated to because that's not an issue here. That's not an issue with the parties. The issue is other than that. They've admitted that the rock is cocaine. But the *Page 10 
issue is whether the defendant actually possessed it, trafficked it, and the issue regarding the criminal tools of course is depending on whether there was a crime at all as criminal tools regarding, right? So since its stipulated to, we will accept that, it's not a disputed fact and there's no need to call a witness and go through all the laboratory analysis and chemistry analysis of what is cocaine and what is crack cocaine if both sides agree it's crack cocaine, which they do."
 {¶ 24} Appellant argues that the extent of the stipulation was to what the state's laboratory analysis showed and did not extend to whether or not the analysis was correct. Contrary to appellant's assertions, however, it is clear from the record that appellant stipulated to the report and its application to the drug evidence, thereby stipulating to the fact that the drugs were, in fact, crack cocaine, as a matter of evidence.
 {¶ 25} Appellant further argues that he may have stipulated to the lab report, but he did not stipulate to its accuracy in the abstract. Again, we find appellant's argument to be misplaced. A review of the record demonstrates that appellant agreed that the lab report, which corresponded with the evidence, showed that the drugs were, in fact, crack cocaine.
 {¶ 26} The court notes that appellant's stipulation to the drug evidence is consistent with a sound defense strategy. It is a sound defense strategy to try to keep the scientific investigation unit testimony from the jury and to focus on the defense's proposed points of contention that appellant did not sell the drugs and the police testimony was not believable.
 {¶ 27} Appellant also mistakenly argues that the instruction to the jury was an instruction as to the law of stipulated elements of crimes rather than an instruction as to a piece of evidence introduced at trial. Appellant took a small statement by the court during instructions regarding an evidentiary point of the stipulation and expanded that into an *Page 11 
instruction for the jury to disregard the standard of proof of elements of the crimes. Appellant argues that this small instruction on stipulations in general is an instruction that the jury need not deliberate on an element of drug trafficking or possession. However, appellant's argument is misguided. The instruction in this case was on an evidentiary basis on what was proven by the agreement of the parties, specifically that state's exhibit 3 was .08 grams of crack cocaine, not that appellant ever possessed state's exhibit 3, or that appellant ever sold or offered to sell state's exhibit 3.
 {¶ 28} Accordingly, appellant's second assignment of error is overruled.
 {¶ 29} Appellant's last two assignments of error deal primarily with his sentence and will, therefore, be addressed together. Appellant argues that the trial court erred in sentencing him. Specifically, appellant argues that he should not have been sentenced for both drug possession and drug trafficking, and he further argues that his sentence is disproportionate to the seriousness of the offense.
 {¶ 30} The Ohio Supreme Court has clarified the test to be applied when reviewing claims involving allied offenses of similar import. Under the analysis of State v. Rance (1999), 85 Ohio St.3d 632, a reviewing court is to compare the elements of the offenses in the abstract. If the elements correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus. Id. at 638-639, 710 N.E.2d 699 (citing State v.Jones, 78 Ohio St.3d 12, 14, 1997-Ohio-38, 676 N.E.2d 80). *Page 12 
 {¶ 31} R.C. 2925.11(A) states that, "no one shall knowingly obtain, use or possess a controlled substance." R.C. 2925.03(A) states that, "no one shall knowingly sell or offer to sell a controlled substance." Possession does not require the defendant sell or offer to sell, and trafficking does not require the defendant obtain, possess, or use. Therefore, these statutes do not violate R.C. 2941.25(A). Accordingly, R.C. 2941.25(B) controls, and these statutes of dissimilar import may apply at the same time in this case.
 {¶ 32} Appellant cites certain pre-Rance[3] cases in his brief. However, the cases appellant references do not apply to drug trafficking and possession. Here, the record demonstrates that appellant committed the two crimes with separate animus. Appellant brought the crack cocaine with him to the area of East 131st Street and Marston Avenue, and then with separate thought and animus decided to offer and then sell them to the informant. Appellant committed two separate and distinct crimes and may, therefore, be punished for both. Such a result corresponds to this court's allied offense precedents in State v.Burston (May 5, 1994), Cuyahoga App. No. 65128; State v. Daanish (Jan. 6, 1994), Cuyahoga App. No. 65514; and State v. Lyons, Cuyahoga App. No. 84377, 2005-Ohio-392.
 {¶ 33} Appellant argues that his sentence is disproportionate to the seriousness of the conduct. Ohio trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing *Page 13 
maximum, consecutive, or more than the minimum sentences. State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856. Moreover, in Foster, the Ohio Supreme Court found that all types of judicial fact-finding are unconstitutional and no longer required, including findings that all types of judicial fact-finding are unconstitutional and no longer required, including findings that a sentence is proportionate to others of similarity under R.C. 2929.11(B).
 {¶ 34} In addition, this court decided in State v. Dowell, Cuyahoga App. No. 88864, 2007-Ohio-5534, that after Foster, the correct manner for a trial court to impose a proportional and consistent sentence under R.C. 2929.11(B) is to follow the sentencing factors which are not mandatory but still encouraged by Foster and its progeny. Specifically, this court found, "consistency in sentencing is achieved by weighing the sentencing factors." Id. at ¶ 8. In Dowell, the sentencing court considered the defendant's lengthy record and made certain findings which, although not mandatory, did show that the factors were considered and, therefore, consistency and proportionality were achieved.
 {¶ 35} In the case at bar, the lower court considered appellant's record of three felony convictions, two of which were separate violent offenses for which appellant served a total of 11 years, and the factor that appellant was out on bond from Euclid and on postrelease control when he committed these offenses. Because of all of this, the trial court stated that appellant had not learned from his prior prison time, and the court felt that the offense was serious and punishment was necessary considering appellant's record. The trial court found that consecutive sentences were necessary to protect the public and punish the offender. *Page 14 
 {¶ 36} The record demonstrates appellant was a threat to the community. The trial court sentence was within the statutory range for two convictions for fifth degree felonies. The trial court's actions were proper.
 {¶ 37} Accordingly, appellant's third and fourth assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, J., CONCURS; MELODY J. STEWART, J., CONCURS IN JUDGMENT ONLY
[1] Tr. 5.
[2] Tr. 9.
[3] State v. Rance (1999), 85 Ohio St.3d 632. Appellant cites pre-Rance case, State v. Logan (1979), 60 Ohio St.2d 126, for the proposition that kidnapping is a crime of such nature that it necessarily merges with other crimes like robbery, rape, and possibly murder to the point where it necessitates having its own separate test from that of Rance. *Page 1